

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-12-00085-CR

JERRY PAUL LUNDGREN                                                    APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM COUNTY COURT AT LAW OF WISE COUNTY

----------

## DISSENTING OPINION

----------

I cannot join the majority's thoughtful opinion and must respectfully dissent.

This court has repeatedly held that when a defendant is placed on community supervision, even as the result of a plea bargain, that defendant must file a motion for new trial to complain of conditions of community supervision, involuntariness of a negotiated plea, or ineffective assistance of counsel or that

the punishment is infirm.[1]  Yet the majority now says that because Appellant entered into a negotiated plea and waived his right of appeal, he cannot do what we have told him he must do to preserve certain claims:  pursue a motion for new trial.[2]  The reason given is that he cannot benefit from a rule of procedure that is meant to make pursuit of certain complaints more onerous.[3]  The majority also suggests that Appellant was bound by the conditions of community supervision until he filed his motion for new trial, and then he may have been relieved of those obligations until the motion for new trial was overruled by operation of law.[4]  The majority also states that we must disregard the final judgment stating that

---

[1] *See Cooper v. State*, 45 S.W.3d 77, 82 (Tex. Crim. App. 2001) ("[M]eritorious claims of involuntary pleas may be raised by other procedures: motion for new trial and habeas corpus."); *Donovan v. State*, No. 02-11-00033-CR, 2012 WL 3030562, at *2–3 (Tex. App.—Fort Worth July 26, 2012, no pet. h.) (motion for reh'g and reh'g en banc pending) (holding that "[t]o preserve error for appellate review [regarding conditions of community supervision], a party must make a timely and specific objection or motion at trial," "[pursue a] motion to amend" or "present[] written objections to the trial court at any point between the time the conditions [are] imposed and the adjudication hearing"; *Kim v. State*, 283 S.W.3d 473, 475 (Tex. App.—Fort Worth 2009, pet. ref'd) (holding failure to object to sentence at time of imposition or to complain of sentence in motion for new trial forfeits complaint); *Edwards v. State,* 280 S.W.3d 441, 443 (Tex. App.— Fort Worth 2009, pet. ref'd) ("The record before us contains no motion for new trial. Although a motion for new trial is not a prerequisite to a successful ineffective assistance of counsel claim, evidence presented at a motion for new trial hearing may offer insight into defense counsel's motives behind her actions and may rebut the strong presumption of reasonable professional assistance.").

[2] *See* Majority Op. at 8.

[3] *See id.*

[4] *See id.* at 7–8.

2

community supervision terms did not commence until June 22, slightly more than five months after Appellant's January 14 arrest.[5]  Would the majority hold that Appellant's community supervision could be revoked for a violation that occurred before he filed the motion for new trial that we have held is required had that motion for new trial been granted on grounds of an involuntary plea, ineffective assistance of counsel, or the trial court's failure to comply with the plea bargain agreement?

The Texas Court of Criminal Appeals has explained that when, at the time of sentencing for the primary offense, the defendant still had time to file a motion for new trial in the proceeding involving the prior conviction, the prior conviction was not final and "was subject to being vitiated merely by the defendant's subsequent filing of a motion for new trial or a notice of appeal."[6]

Similarly, in the case now before this court, Appellant waived his right to appeal but did not waive his right to file a motion for new trial.  The judgment in the case was not final until mandate issued.[7]  The final judgment states that the terms of community supervision began on June 22.  The new offense occurred the previous January.  No one claims that the prior judgment was final on January 14 for the purpose of affecting sentencing in another trial.  And although

[5]*See id.* at 9.

[6]*Milburn v. State,* 201 S.W.3d 749, 752–54 (Tex. Crim. App. 2006).

[7]*See Ex parte Johnson*, 12 S.W.3d 472, 473 (Tex. Crim. App. 2000) ("Prior to the mandate, a judgment is not final.").

3

the violation occurred before Appellant filed his motion for new trial, the State did not file its petition to proceed to adjudication until after Appellant had filed his motion for new trial.

I frankly do not understand the majority's hypothetical stalking and Washington marijuana scenarios.[8] Nor do I understand the majority's conclusion that

> the filing of the motion for new trial in each of these cases [stalking and going to Washington to possess marijuana] retroactively stamps a "King's X" on these clear and intentional violations of the terms and conditions of community supervision and eviscerates the trial court's power to enforce its order. Not only would Appellant's position forgive all these past violations, but the defendants in our hypotheticals would have free reign to continue these transgressions for up to 75 days after their community-supervision sentences are imposed.[9]

Specifically, I do not understand the majority's statement that Appellant's "interpretation of the law would obligate a trial court to release a defendant placed on community supervision and risk that the defendant will commit a catastrophic violation."[10] Catastrophic violation? What does that mean? A new offense? Would not the penal code be as effective a deterrent as a condition of community supervision when the maximum punishment on the primary offense

---

[8]*See* Maj. Op. at 12–14.

[9]*Id.* at 13.

[10]*Id.* at 14.

4

has already been set at 365 days?  A catastrophic failure to pay fees?  A catastrophic failure to report?

Respectfully, if we abandon the rules of procedure to avoid "retroactively stamp[ing] a 'King's X'" on violations of terms and conditions of community supervision, we take an inappropriate shortcut that undermines the rule of law. Lundgren waived his right to appeal.  If the State had wanted to condition the plea bargain on the conviction's becoming final immediately upon suspending imposition of sentence and placing Lundgren on community supervision, the State could have conditioned the agreement on waiver of filing a motion for new trial as well as upon waiver of appeal.  If the trial court had wanted the terms and conditions of community supervision to be immediately binding, the trial court could have released Appellant on a personal bond with the conditions of community supervision imposed as conditions of bond.  Neither the State nor the trial court took such action.

Nor do I understand why Appellant would have had "free reign to continue these transgressions for up to 75 days."  All the trial court had to do was to deny the motion for new trial immediately rather than choosing to wait for the motion to be overruled by operation of law.

Appellant used rules of procedure to his benefit.  The majority holds that he cannot use the rules of procedure to manipulate the system for his benefit. Respectfully, the rules do not change just because a defendant, or the State for that matter, reaps an unintended benefit that we do not approve of.  The

5

application of statutes, rules of evidence, and even rules of procedure must be consistent, no matter who benefits. Normally, a judgment means what it says.[11] Normally, a defendant may file a motion for new trial.[12] Normally, a judgment is not final until mandate has issued, which has still not happened in the case before us. Do we add the caveat that these rules apply unless Appellant benefits?

Respectfully, I must dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED: August 22, 2013

---

[11]*See Gonzales v. State*, 309 S.W.3d 48, 52 (Tex. Crim. App. 2010) ("As our analysis shows, the court of appeals' conclusion that the 1987 judgment was not a final conviction conflicts with a plain reading of the instrument itself.").

[12]*See* Tex. R. App. P. 21.